IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NICHOLAS S. BOLTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. _____ |
| LENN WOOD, Sheriff of Coweta County, Georgia, a political subdivision of the State of Georgia; JOHN TAYLOR COLLINS, individually and in his official capacity as a former Deputy Sheriff for Coweta County, Georgia; CHRISTIAN SPINKS, individually and in his official capacity as a Deputy Sheriff for Coweta County, Georgia; and JON HOUSE, individually and in his official capacity as a former Deputy Sheriff for Coweta County, Georgia | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | | |

## **COMPLAINT FOR DAMAGES**

COMES NOW NICHOLAS S. BOLTON, Plaintiff in the above-styled Civil

Action, and hereby files this Complaint for Damages as follows:

## JURISDICTION AND VENUE

1.

This is a civil action brought by Plaintiff pursuant to 42 U.S.C. §§ 1983, and 1988; the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; O.C.G.A. §§ 51-1-13 and 51-1-14, et seq., as set forth herein.

2.

This Court has jurisdiction under 28 U.S.C. §§1331 and 1343.  Plaintiff also invokes the Court's supplemental jurisdiction to hear pendant state law claims under 28 U.S.C. § 1367.

3.

Venue is proper in this Court pursuant to 28 U.S.C §1391(b) and N.D.L.R. 3.1, in that one or more of the Defendants reside in this district and division.

## PARTIES

4.

Defendant Lenn Wood ("hereinafter "Wood") is, and was at all times relevant to this Complaint, the duly elected Sheriff of Coweta County, Georgia. Defendant Wood may be served with process in this action at the Coweta County Sheriff's Office located at 560 Greison Trail, Newnan, Georgia 30263.

5.

Defendant John Taylor Collins (hereinafter "Collins") was, at all times relevant to this Complaint, a deputy sheriff for Sheriff's Office of Coweta County, acting under color of state law and under the authority or direction of Sheriff Wood.  Defendant Collins may be served with process in this action at his residence located at 130 W. Fork Drive, Newnan, Georgia 30263-4480, or at his place of employment, Honda of Newnan located at 391 Newnan Crossing Bypass, Newnan, Georgia 30265.

6.

Defendant Christian Spinks (hereinafter "Spinks") is and was, at all times relevant to this Complaint, a deputy sheriff for Sheriff's Office of Coweta County, acting under color of state law and under the authority or direction of Sheriff Wood.  Defendant Spinks may be served with process in this action at the Coweta County Sheriff's Office located at 560 Greison Trail, Newnan, Georgia 30263, or at his residence located at 79 Sunrise Drive, Newnan, Georgia 30263.

7.

Defendant Jon House (hereinafter "House") was, at all times relevant to this Complaint, a deputy sheriff for Sheriff's Office of Coweta County, acting under color of state law and under the authority or direction of Sheriff Wood.  Defendant House may be served with process in this action at his residence located at 6100 Bellmoore Park Lane, Duluth, Georgia 30097-2543.

8.

At all times relevant to this Complaint, Defendants acted under color of state law and within the scope and course of their employment and authority as employees or agents of the Coweta County Sheriff's Office.

**FACTS**

9.

Plaintiff adopts and incorporates by reference those allegations set forth in Paragraphs 1 through 8 above as if set forth fully herein.

10.

At all relevant dates and times to this matter, Mr. Bolton was unemployed and living in his 2001 Chevrolet Tahoe.

11.

Throughout the several days prior to the subject shooting of Mr. Bolton on June 30, 2019, Mr. Bolton parked his vehicle underneath a tree at the furthest most end of the Kohl's shopping center parking lot in Newnan, Georgia, off Georgia Highway 34 without incident.

12.

Shortly after 10:30 a.m. on the morning of June 29, 2019, Mr. Bolton was approached at this location by Coweta County Sheriff's Deputy Thompson. Deputy Thompson approached Mr. Bolton to inquire as to his identity and his purpose for being parked in this location over the past several days.

13.

During the encounter, Deputy Thompson was informed that Mr. Bolton was homeless and was living out of his vehicle at said location. Deputy Thompson was able to confirm the identity of Mr. Bolton and, upon learning of Mr. Bolton's situation, provided him with a bottle of water. Mr. Bolton was not asked or otherwise instructed to depart the area, and he was not told that he was loitering.

14.

At approximately 2:15 a.m. on June 30, 2019, Mr. Bolton, who remained continuously parked in the same location throughout the day and evening, was asleep in the back seat of his vehicle.

15.

Mr. Bolton was suddenly awoken by Defendant former Deputy John Taylor Collins, who demanded that Mr. Bolton present his driver's license and stand outside of his vehicle.

16.

Defendant Collins was joined by Defendant House at the scene.

17.

Both deputies alleged that Mr. Bolton was loitering, and because he would not immediately step out of his car, he was obstructing an investigation. Defendant House threatened that Mr. Bolton could either get out of his vehicle or "we can take you out and you can go to jail. Your choice . . . you have one chance to get out."

18.

Mr. Bolton was not wearing shoes. Mr. Bolton, who had retrieved his license, attempted to explain his encounter with Deputy Thompson from earlier in the day. Neither Defendant Collins nor Defendant House were receptive to Mr. Bolton's recitation of his encounter with Deputy Thompson earlier that day.

19.

Mr. Bolton, an African American male, was frightened by the aggressive conduct of Defendants Collins and House, both white males, especially in light of the fact that he was told earlier that day by Deputy Thompson that he wasn't doing anything wrong.

20.

After trying to explain his interaction earlier in the day with Deputy Thompson to Defendants Collins and House, and because he was accused of loitering, Mr. Bolton started his vehicle and drove away from the parking spot.

21.

Mr. Bolton proceeded to drive through the parking lot and turned left towards Highway 34.

22.

Both Defendant Collins and Defendant House pursued Mr. Bolton in their police vehicles and requested additional assistance over the police radio.

23.

Defendant Collins performed a Pursuit Intervention Technique (also known as a "PIT" maneuver) on Mr. Bolton's vehicle.  As a result, Mr. Bolton's vehicle spun approximately 180 degrees from its original heading and stopped.   Defendant Collins immediately struck the front of Mr. Bolton's vehicle with the front of his police SUV.

24.

The front of Defendant Collins' vehicle was in physical contact with the front of Mr. Bolton's vehicle immediately after the PIT maneuver.

25.

Almost immediately after Defendant Collins struck the front of Mr. Bolton's vehicle, Defendant House struck the driver's side of Mr. Bolton's vehicle with the front of his police car.

26.

As Defendant House was physically pinning Mr. Bolton's vehicle on the driver's side, Defendant Christian Spinks almost simultaneously struck the passenger side of Mr. Bolton's vehicle with the front of his police vehicle and also physically pinned it.  The force of this impact shoved Mr. Bolton's vehicle towards Defendant House's vehicle, which had already collided with Mr. Bolton.

27.

After being struck in the front (by Defendant Collins), on the driver's side (by Defendant House), and in the passenger's side (by Defendant Spinks), Mr. Bolton's vehicle did not move.  Mr. Bolton's car was pinned by the Sheriff's vehicles, so that it could not and did not move.

28.

After having been stopped and pinned in by the Sheriff's vehicles, neither Mr. Bolton nor his vehicle posed any present danger to Defendants Collins, Spinks, or House.

29.

Defendant Collins sprang out of his vehicle.

30.

While standing to the side of his vehicle and out of the zone of danger, Defendant Collins immediately fired his service pistol at Mr. Bolton, striking him in the head.

31.

At the time Mr. Bolton was shot in the head, all three of the Deputies were either in their vehicles or sheltering behind their vehicle doors.

32.

At the time of this shooting, there was no objective threat of serious bodily injury or death to anyone present.

33.

Defendant Collins did not provide any verbal instructions or warnings to Mr. Bolton after the PIT maneuver and before firing his weapon.

34.

Defendant Collins did not say anything to Mr. Bolton after the PIT maneuver and before firing his weapon.

35.

Defendant Collins knew that Mr. Bolton was not armed at the time of the shooting.

36.

Defendant Spinks knew that Mr. Bolton was not armed at the time of the shooting.

37.

Defendant House knew that Mr. Bolton was not armed at the time of the shooting.

38.

Defendant Collins knew that Mr. Bolton was not armed throughout his entire interaction with Mr. Bolton on June 30, 2019.

39.

Defendant Spinks knew that Mr. Bolton was not armed throughout his entire interaction with Mr. Bolton on June 30, 2019.

40.

Defendant House knew that Mr. Bolton was not armed throughout his entire interaction with Mr. Bolton on June 30, 2019.

41.

Defendant Collins did not see Mr. Bolton throw anything from his vehicle prior to the shooting.

42.

Defendant Spinks did not see Mr. Bolton throw anything from his vehicle prior to the shooting.

43.

Defendant House did not see Mr. Bolton throw anything from his vehicle prior to the shooting.

44.

Mr. Bolton's vehicle was searched after the shooting.  No guns were found during that search.

45.

Mr. Bolton's vehicle was searched after the shooting.  No knives were found during that search.

46.

Mr. Bolton's vehicle was searched after the shooting.  No drugs were found during that search.

47.

Mr. Bolton's vehicle was searched after the shooting.  No illegal drugs were found during that search.

48.

Mr. Bolton's vehicle was searched after the shooting.  No items of any kind were found during that search that the Coweta County Sheriff's Office considered to be a deadly weapon.

49.

Mr. Bolton's vehicle did not move on its own accord after the PIT maneuver.  It only shifted after being struck by all three of the Sheriff's vehicles.

50.

Defendant House's police vehicle was in physical contact with Mr. Bolton's vehicle at time of shooting.

51.

Defendant Spink's police vehicle was in physical contact with Mr. Bolton's vehicle at time of shooting.

52.

Defendant Collins's police vehicle was in physical contact with Mr. Bolton's vehicle at time of shooting.

53.

Defendant House's police vehicle was moved away from Mr. Bolton's vehicle after the shooting and before the GBI arrived at the scene.

54.

Defendant Spinks' police vehicle was moved away from Mr. Bolton's vehicle after the shooting and before the GBI arrived at the scene.

55.

When Defendant Collins improperly used deadly force against Mr. Bolton by shooting through the front windshield, Mr. Bolton was struck in the right eye by the bullet.  The bullet did not exit his skull.  Rather, it fragmented, and several of the subject fragments remain embedded in Mr. Bolton's brain.

56.

After being shot, Mr. Bolton did not move and was unconsciously slumped in his vehicle.  He remained this way for a short period of time when his body began to uncontrollably and reflexively jerk and twitch.

57.

Defendant House broke the drivers' window of Mr. Bolton's vehicle with his police baton.  By this time, numerous other Coweta County deputies had arrived at the scene.

58.

One of the Coweta County Deputies pulled Mr. Bolton from his vehicle and allowed him to fall uncontrollably onto the concrete parking lot.

59.

Defendant Spinks exerted unnecessary and unreasonable force by handcuffing Mr. Bolton's wrists behind his back, and in doing so, kneeled on Mr. Bolton's back and neck pinning him to the concrete. At this time, Mr. Bolton had been shot in the head, was not resisting in any way, was crying in agony and pain, and begging for water. Mr. Bolton also stated that his shoulder was hurting, and he asked to sit up.

60.

Defendant Spinks exerted unnecessary and unreasonable force by continuing to kneel on Mr. Bolton's back and neck while Mr. Bolton was handcuffed with his hands behind his back and while he was not resisting in any way.

61.

Defendant House was at the scene when Defendant Spinks exerted unnecessary and unreasonable force by handcuffing Mr. Bolton's wrists behind his back, and in doing so, kneeled on Mr. Bolton's back and neck pinning him to the concrete and did not intervene to stop Defendant Spinks' conduct.

62.

Defendant House heard Mr. Bolton crying in agony and pain and did nothing in response.

63.

Mr. Bolton was not allowed to sit up as he requested.

64.

Mr. Bolton was not given water by any Coweta County Deputy after being shot in the head as he requested, while Deputy Collins was offered and provided bottled water at the scene.

65.

None of the Coweta County Deputies rendered any medical care to Mr. Bolton. Defendant Spinks, however, continued to exert unnecessary and unreasonable force by continuing to pin Mr. Bolton to the ground by kneeling on his back and neck.

66.

Once EMS arrived, Defendant House removed the handcuffs on Mr. Bolton from his back to the front so EMS personnel could render medical care and treatment to him.

67.

Upon arrival of medical personnel, Mr. Bolton was initially assessed and treated at the scene by Coweta County Fire and Rescue. They decided that Mr. Bolton's injuries were grave enough to necessitate his evacuation by an aeromedical helicopter.

68.

Mr. Bolton was flown to WellStar Atlanta Medical Center for emergency medical care and treatment. He remained an inpatient for approximately three (3) months. During this time, he underwent numerous surgeries, which included the removal portions of his skull to allow access to the embedded bullet fragments from former Deputy Collins' handgun. Mr. Bolton spent weeks in the intensive care unit and eventually was transferred to inpatient physical therapy before being discharged to West Georgia Medical Center for outpatient therapy.

69.

At the time of the filing of this Complaint, Mr. Bolton's medical treatment for his injuries remains ongoing. For months after the shooting, Mr. Bolton was missing several portions of his skull, which were temporarily covered with skin flaps, and as a result, he had to wear a helmet to protect his brain. He has since had surgery and has been fitted with an implant to cover portions of his brain where his skull was missing as a result of the shooting.

70.

Mr. Bolton has pronounced loss of use and weakness on the left side of his body.  He requires a mobility aid to ambulate.  He is blind in his right eye, which has also lost focus and crossed, as a result of this shooting. He has constant painful headaches. In short, he remains in the early stages of his treatment and will never fully recover from his injuries, which were improperly and unjustly inflicted by Defendants.

71.

As a direct and proximate result of the injuries he sustained in the June 30, 2019 incident, Mr. Bolton has incurred significant special damages, including medical bills and expenses in excess of $913,400.00, lost wages, and lost capacity to work, for which Defendants are liable.  Mr. Bolton will continue to incur substantial medical bills and expenses for future medical care and treatment.

72.

Defendant Collins, Defendant Spinks, and Defendant House violated Mr. Bolton's civil rights by inflicting brutal, excessive, unreasonable, and unnecessary physical force upon him as set forth above, and by failing to intervene to stop the infliction of such force upon Mr. Bolton.

73.

As Sheriff, Defendant Wood is the final decision maker and ultimate policymaker for the Coweta County Sheriff's Office, and implements policies, practices, customs, and procedures of the Coweta County Sheriff's Office.   In doing so, Defendant Wood has instituted policies that caused Defendants Collins and Spinks to systematically use excessive force in violation of Mr. Bolton's constitutional rights, and has condoned, encouraged, and approved such use of excessive force with deliberate indifference to Mr. Bolton's constitutional rights.

74.

As Sheriff of Coweta County, Defendant Wood has actual knowledge that his Deputies routinely use excessive force in making stops and arrests with deliberate indifference to the constitutional rights of individuals who they stop, detain, and arrest.

75.

As Sheriff of Coweta County, Defendant Wood is responsible for the oversight, supervision, and training of his Deputies.

76.

As Sheriff, Defendant Wood adopted or approved both formal and informal policies that caused Defendants Collins, Spinks, and House to use excessive force against individuals who they stop, detain, and/or arrest, including Mr. Bolton, and

he has tolerated and condoned the use of excessive force within the Coweta County Sheriff's Office.

77.

Mr. Bolton's attorneys provided Defendants with an *ante litem* notice pursuant to O.C.G.A. § 36-11-1, *et seq.* on June 17, 2020.  A true and correct copy of that notice is attached hereto and incorporated herein as Exhibit "A."

78.

Neither Defendants nor anyone acting on their behalf responded to Mr. Bolton's June 17, 2020 *ante litem* notice.

79.

Plaintiff has complied with all statutory and procedural prerequisites prior to filing this lawsuit.

## <u>COUNT I</u>
## FOURTEENTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST DEFENDANTS COLLINS, SPINKS, AND HOUSE

80.

Plaintiff adopts and incorporates herein paragraphs 1 through 79 as if as if set forth fully herein.

81.

Mr. Bolton had a Fourteenth Amendment right to be free from the use of excessive force against him.

82.

There was no factual or legal justification at any time for the degree of force used by Defendant Collins when he shot Mr. Bolton in the head, without warning, when Mr. Bolton posed no objectively reasonable threat to Defendants Collins, Spinks, or House.

83.

There was no factual or legal justification at any time for the degree of force used by Defendant Spinks in handcuffing Mr. Bolton's wrists behind his back and kneeling on Mr. Bolton's back and neck, pinning him to the concrete for an excessive period of time after Mr. Bolton had been shot in the head, was handcuffed with his hands behind his back, was not resisting in any way, was crying in agony and pain, and begging for water.

84.

There was no factual or legal justification at any time for the degree of force used by Defendant Spinks in his continuing to kneel on Mr. Bolton's back and neck while Mr. Bolton was handcuffed with his hands behind his back, after being shot in the head, and while he was not resisting in any way.

85.

Defendant House was physically present at the scene and failed to intervene or take any action to prevent Defendant Collins or Defendant Spinks from exerting excessive force in violation of Mr. Bolton's Fourteenth Amendment rights.

86.

Mr. Bolton was subjected to the use of excessive force in violation of his Fourteenth Amendment rights because the force used against him by Defendants Collins and Spinks was not applied in a good faith effort to maintain or restore discipline, but instead was maliciously or sadistically used for the very purpose of causing harm and was gratuitous, unnecessary, and punitive, and Defendant House did nothing to stop or prevent such excessive force from being exerted.

87.

The law was clearly established at all times relevant to this Complaint that a pretrial detainee or arrestee cannot be subjected to malicious and sadistic force used solely for punitive or retaliatory purposes and not in a good faith effort to maintain order and discipline, and accordingly, Defendants are not entitled to qualified immunity with respect to any of the claims set forth herein.

88.

Defendants Collins, Spinks, and House are liable to Plaintiff under 42 U.S.C. § 1983 for violation of Mr. Bolton's Fourteenth Amendment right to be free from the use of excessive force during his arrest.

## COUNT II
## FOURTEENTH AMENDMENT SUPERVISORY LIABILITY CLAIM
## AGAINST DEFENDANT WOOD

89.

Plaintiff adopts and incorporates herein paragraphs 1 through 88 as if as if set forth fully herein.

90.

At all times relevant herein, Defendant Wood, as Sheriff, maintained a custom or policy within the Coweta County Sheriff's Office, of permitting deputies to use punitive force against arrestees who were deemed uncooperative under circumstances where there was no constitutional justification for the use of force, and said custom or policy amounted to deliberate indifference to the rights of Mr. Bolton to be free from the use of excessive force.

91.

Defendant Wood's custom or policy of permitting the use of punitive force resulted in a culture of systemic abuse of arrestees and deliberate indifference to the constitutional rights by Coweta County deputies because they believed that they were acting consistently with departmental policy as implemented and enforced by Defendant Wood.

92.

Defendant Wood has supervisory liability under 42 U.S.C. § 1983 for the violation of Mr. Bolton's constitutional rights because Defendant Wood's custom

or policy of permitting the use of punitive force has caused arrestees and pretrial detainees such as Mr. Bolton to be unconstitutionally subjected to excessive force as a result of Defendant Wood's deliberate indifference to such rights.

93.

At the time of the June 30, 2019, incident complained of in this Complaint, Defendant Collins was on probationary employment with the Coweta County Sheriff's Office.

94.

Prior to the June 30, 2019, incident complained of in this Complaint, Defendant Collins had been suspended from his employment with the Coweta County Sheriff's Office.

95.

Despite the suspension for Conduct Unbecoming an Employee and multiple probationary periods, Defendant Wood allowed Defendant Collins to retain his position as a deputy sheriff for Sheriff's Office of Coweta County.

96.

Following the June 30, 2019 shooting, an internal investigation was commenced questioning Defendant Collins's integrity and trust.

97.

Defendant Collins was allowed to resign in lieu of termination after receiving notice that he was being dismissed from employment with Coweta

County Sheriff's Office of for yet another incident of conduct unbecoming an employee and in violation of GCIC rules.

98.

The law was clearly established at all times herein that a supervisor such as Defendant Wood cannot be deliberately indifferent to the use of excessive force against arrestees by subordinate officers, and accordingly, Defendant Wood is not entitled to qualified immunity for purposes Plaintiff's of supervisory liability claim under Section 1983.

99.

Defendant Wood is liable for violating the Fourteenth Amendment rights of Mr. Bolton, and is not entitled to qualified immunity, for both his actions in causing Defendant Collins and Defendant Spinks to violate such rights and for his omissions in failing to stop the continued violation of such rights, both of which resulted from the deliberate indifference of Defendants Collins and Spinks.

100.

The aforementioned customs, policies, and conduct of Defendant Wood, as the Sheriff of Coweta County proximately caused the violation of Mr. Bolton's constitutional rights.

<u>**COUNT III**</u>
**ASSAULT AND BATTERY AGAINST DEFENDANTS COLLINS, SPINKS, AND HOUSE**

101.

Plaintiff adopts and incorporates herein paragraphs 1 through 100 as if as if set forth fully herein.

102.

On June 30, 2019, Defendant Collins shot Mr. Bolton in the head, without warning, when Mr. Bolton posed no objectively reasonable threat of harm.

103.

After Mr. Bolton had been shot in the head and was completely unresponsive and not resisting arrest in any way, Mr. Bolton was pulled from his vehicle and thrown to the concrete pavement.

104.

After Mr. Bolton had been shot in the head and was completely unresponsive and certainly not resisting in any way and was lying face-down on the concrete pavement, Defendant Spinks kneeled on Mr. Bolton's back and neck and handcuffed his hands behind his back.

105.

Defendant Spinks continued to kneel on Mr. Bolton's back and neck while Mr. Bolton was handcuffed with his hands behind his back and was not resisting in any way.

106.

Defendant House was physically present at the scene and failed to intervene or take any action to prevent Defendant Collins from shooting Mr. Bolton in the head.

107.

Defendant House was physically present at the scene and failed to intervene or take any action to prevent Defendant Spinks from kneeling on Mr. Bolton's back and neck, handcuffing Mr. Bolton's wrists behind his back, and pinning him to the concrete after he had been shot in the head, was not resisting in any way, and was crying in agony and pain, begging for water, stating that his shoulder was hurting, and was asking for permission to sit up.

108.

Defendant House was physically present at the scene and failed to intervene or take any action to prevent Defendant Spinks from continuing to kneel on Mr. Bolton's back and neck while Mr. Bolton was handcuffed with his hands behind his back and while he was not resisting in any way.

109.

Mr. Bolton was not allowed to sit up as he requested.

110.

Mr. Bolton was not given water by any Coweta County Deputy after being shot in the head as he requested.

111.

None of the Coweta County Deputies rendered any medical care to Mr. Bolton.

112.

At the time of the filing of this Complaint, Mr. Bolton's medical treatment for his injuries remains ongoing.  For months after the shooting, Mr. Bolton was missing several portions of his skull, which are temporarily covered with skin flaps, and as a result, he must wear a helmet to protect his brain.  He has since had surgery and has been fitted with an implant to cover portions of his skull that were missing as a result of the shooting.

113.

Mr. Bolton has pronounced loss of use and weakness on the left side of his body.  He requires a mobility aid to ambulate.  He is blind in his right eye, which has also lost focus and crossed, as a result of this shooting. He has constant painful headaches. In short, he remains in the early stages of his treatment and will never

fully recover from his injuries, which were improperly and unjustly inflicted by Defendants.

114.

Defendants Collins, Spinks and House are liable for the torts of assault and battery based on their conduct and actions on June 30, 2019.

<u>COUNT IV</u><br>**PUNITIVE DAMAGES AGAINST ALL DEFENDANTS**

115.

Plaintiff adopts and incorporates herein paragraphs 1 through 114 as if as if set forth fully herein.

116.

Defendants' actions were motivated by evil motive or intent and involved reckless or callous indifference to Mr. Bolton's federally protected rights pursuant to the Fourteenth Amendment to the United States Constitution.

117.

Defendants are liable to Plaintiff for punitive damages as a result of their intentional and malicious acts and omissions as set forth herein.

**<u>CLAIM FOR DAMAGES</u>**

1.     As a direct and proximate result of the aforementioned unconstitutional conduct of Defendants, Mr. Bolton was deprived of his constitutional rights, suffered severe bodily injuries, endured significant physical and mental pain and suffering and emotional distress, and suffered actual

damages that will be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

2.     Plaintiff is entitled to recover compensatory damages from Defendants resulting from Defendants' unlawful conduct as alleged herein.

3.     Plaintiff is entitled to recover special damages from Defendants resulting from Defendants' unlawful conduct as alleged herein.

4.     Because Defendants' conduct was malicious, intentional, and carried out in bad faith, Plaintiff is entitled to recover punitive damages from Defendants.

5.     Plaintiff is also entitled to recover reasonable attorney's fees under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully prays that:

(a)     Summons and process issue and that Defendants be served as required by law;

(b)     That judgment be rendered in favor of Plaintiff and against Defendants on all counts of this Complaint for Damages and that Plaintiff be awarded general, special, and compensatory damages incurred as a result of Defendants' wrongful conduct;

(c)     That Plaintiff be awarded punitive damages against Defendants in an amount sufficient to punish Defendants for their unlawful and

wrongful conduct and to deter Defendants from similar unlawful conduct in the future;

(d)     That Plaintiff be awarded attorneys' fees and expenses;

(e)     That all costs of this action be taxed against Defendants; and

(f)     That Plaintiff be awarded such other and further relief as it just and proper under the circumstances and evidence presented.

**A JURY TRIAL IS DEMANDED.**

RESPECTFULLY SUBMITTED this the 2nd day of June, 2021.

/s/ Daniel J. Prieto
DANIEL J. PRIETO
Georgia State Bar No. 118510


Prieto, Marigliano, Holbert & Prieto, LLC
1555 Mount Vernon Road
Atlanta, Georgia 30338
Office: 404-856-0040
Fax: 404-856-0066
dprieto@pmhplaw.com

/s/ Kevin S. Kovalchik
KEVIN S. KOVALCHIK
Georgia State Bar No. 428898


KEVIN S. KOVALCHIK, LLC
Kevin S. Kovalchik, Esq.
278 W. Main Street
Buford, Georgia 30518
Office: 770-653-9580
Fax: 678-482-0209
kevin@ksklegal.com